CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 19 2016
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONALD WAYNE PORTIS, | ) |
| Plaintiff, | ) Civil Action No. 7:15CV00118 |
| v. | ) **MEMORANDUM OPINION** |
| RUAN TRANSPORTATION MANAGEMENT SYSTEMS, INC. | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendant. | ) |

Donald Wayne Portis, proceeding pro se, filed this action against his former employer, Ruan Transportation Management Systems, Inc. ("Ruan"), alleging that he was terminated in retaliation for complaining about safety violations, in violation of Virginia Code § 40.1-51.2:1. On June 26, 2015, the court granted Ruan's motion to compel arbitration and stayed the case pursuant to 9 U.S.C. § 3. The parties subsequently participated in an arbitration hearing conducted by Arbitrator Norman R. Harlan. On October 9, 2016, the arbitrator issued an arbitration award in favor of Ruan. Portis has moved to vacate the arbitration award, and Ruan has filed a responsive request to confirm the award. For the following reasons, the court will deny Portis' motion and confirm the arbitration award.

### Background

Portis began working as a truck driver for Ruan in October of 2007. His employment was terminated on November 21, 2012. During the course of his employment, Portis filed complaints regarding alleged safety violations at Ruan's facility in Salem, Virginia. Portis maintains that he was terminated as a result of those complaints.

Portis' employment with Ruan was governed by a collective bargaining agreement ("CBA") between Ruan and the International Brotherhood of Teamsters Local Union No. 171

(the "Union"). Under the terms of the CBA, Ruan could discipline or discharge an employee only "for just cause." See Ray Aff. Ex. B. at 1, Dkt. No. 4-1. The CBA also prohibited Ruan from discriminating against any employee "in any terms or conditions of employment" for any "prohibited basis of discrimination under applicable state, federal, or local laws." Id. at 1. The CBA further provided that employees could challenge any "alleged violation" of the terms of the CBA through the grievance and arbitration procedure set forth in Article 6 of that agreement. Id. at 3.

On March 16, 2015, Portis filed the instant action alleging that his employment was terminated in violation of Virginia Code § 40.1-51.2:1, which prohibits employers from "discharg[ing] or in any way discriminate[ing] against an employee because the employee has filed a health or safety complaint . . . ." On May 1, 2015, Ruan filed an amended motion to dismiss or, in the alternative, to compel arbitration of Portis' claims. The court granted Ruan's motion and stayed the case in favor of arbitration on June 26, 2015. The court directed Portis to file a grievance pursuant to the procedures set forth in the CBA within 90 days.

Portis filed a grievance with the Union on October 6, 2015. On July 14, 2016 and July 15, 2016, the arbitrator conducted an evidentiary hearing regarding the grievance. Portis was represented by counsel at the evidentiary hearing. During the hearing, the arbitrator heard testimony from several witnesses, including Portis and Richard Israel, who supervised Portis at the time of his termination.

On October 19, 2016, the arbitrator issued an award in favor of Ruan. The arbitrator found that Ruan terminated Portis for just cause as required by the CBA, and that it did not retaliate against Portis for filing safety complaints.

On November 14, 2016, Portis submitted a letter requesting to proceed with his employment discrimination claim in this court. The court construes the letter as a pro se motion

2

to vacate the arbitration award. In its response to the motion, Ruan requests that the court confirm the award. The matter has been fully briefed and is now ripe for disposition.

## Discussion

The court's authority to review an arbitration award is "substantially circumscribed." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006). "In fact, the scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all -- the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (citation and internal quotation marks omitted). "In order for a reviewing court to vacate an arbitration award, the moving party must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act (the "FAA") or one of certain limited common law grounds." MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 857 (4th Cir. 2010).

The FAA provides four grounds on which an arbitration award may be vacated: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct . . . ; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). In addition to the grounds specified in the FAA, "permissible common law grounds for vacating [an arbitration] award 'include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard for the law.'" MCI Constructors, 610 F.3d at 857 (quoting Patten, 441 F.3d at 234). Under Fourth Circuit precedent, "a manifest disregard of the law is established only where the arbitrator[]

3

understands and correctly states the law, but proceeds to disregard the same." Patten, 441 F.3d at 235 (citation and internal quotation marks omitted).

In this case, Portis does not argue or offer any evidence to reflect that there was evident partiality, corruption, or misconduct on the part of the arbitrator. Nor does he argue that the arbitrator exceeded his powers or manifestly disregarded controlling law. Instead, Portis contends that Richard Israel "lied" about an encounter that he had with Portis on November 17, 2012, prior to Portis' termination, and that the arbitrator should not have credited Israel's testimony over his own. Pl.'s Mot. to Vacate at 2, Dkt. No. 37.

The court construes Portis' arguments regarding the alleged perjury of an arbitration witness to suggest that the arbitration award was procured by fraud. See 9 U.S.C. § 10(a)(1). In order for an award to be vacated on this ground, "a party who alleges that an arbitration award was procured by fraud must demonstrate: (1) that the fraud occurred by clear and convincing evidence; (2) that the fraud was not discoverable by due diligence before or during the arbitration hearing; and (3) [that] the fraud materially related to an issue in the arbitration." Barahona v. Dillard's Inc., 376 F. App'x 395, 397 (5th Cir. 2010). As the party seeking to vacate the arbitration award, Portis bears the burden of proving all three prongs. See id. at 398 & n.2 (declining to reach two of the prongs because one of the three was dispositive). Because Portis is unable to satisfy the second prong, the court concludes that the arbitration award is not subject to vacatur on the basis of fraud.

During the evidentiary hearing before the arbitrator, Richard Israel testified that he was the supervisor assigned to administer a written disciplinary warning to Portis on November 17, 2012, and that Portis responded in an aggressive and belligerent manner. Israel testified that Portis jumped from his seat during the meeting, and referred to Israel and other company officials as "hypocrites." July 14, 2016 H'rg Tr. at 240, Dkt. No. 38-3. Rather than signing the

4

disciplinary form, Portis grabbed it from Israel and wrote "Hypocrites I DO IT" on the form. Following his interaction with Portis, Israel reported Portis' conduct to Terminal Manager Shawn Ray, who consulted with Operations Manager Tony Karnes regarding the incident. Ray determined that Portis' conduct constituted gross insubordination, and recommended that he be terminated for the misconduct.

Following the evidentiary hearing, both sides filed briefs in support of their respective positions. The Union argued on behalf of Portis that Israel and other company witnesses provided inconsistent accounts of the encounter between Portis and Israel on November 17, 2012, that Israel's testimony was not worthy of belief, and that there was no credible evidence that Portis acted aggressively toward Israel. In the arbitration award, the arbitrator emphasized that "pains ha[d] been taken to determine what evidence is real; what evidence is exaggerated; what evidence is fabricated and what evidence is relevant." Arbitration Award at 44, Dkt. No. 38-7. The arbitrator ultimately chose to credit most of Israel's testimony, including his description of Portis' aggressive behavior, and found that Portis' own testimony regarding the incident was not credible.

Having reviewed the record, the court concludes that the arbitrator's decision is not subject to vacatur on the basis of fraud. Even assuming that Israel or other company witnesses committed perjury at the evidentiary hearing, it cannot be said that Portis did not have the opportunity to present evidence or argument to the arbitrator regarding their allegedly fraudulent conduct. "The purpose of requiring fraud to be newly discovered before vacating an arbitration award on that ground is to avoid reexamination, by the courts, of credibility matters which either could have been or were in fact called into question during the course of the arbitration proceedings." Roy v. Buffalo Philharmonic Orchestra Society, Inc., 161 F. Supp. 3d 187, 197 (W.D.N.Y. 2016) (citations and internal quotation marks omitted); see also Barahona, 376 F.

5

App'x at 398 ("emphasizing that "where the grounds for fraud [are] not only discoverable, but discovered and brought to the attention of the arbitrators, . . . courts will not give a disappointed party . . . a second bite at the apple"") (citation and internal quotation marks omitted); Lemacks v. Consolidated Freightways Corp., No. 1:95-2117-6, 1997 U.S. Dist. LEXIS 24702, at *10 (D.S.C. July 16, 1997) (noting that "[m]ost courts have held that an arbitration award is not fraudulently obtained within the meaning of Section 10(a) [of the FAA] when the protesting party had the opportunity to rebut his opponent's claims at the arbitration hearing") (citation omitted). In this case, Arbitrator Harlan had the opportunity to address the credibility of the witnesses called by the Union and Ruan, and did, in fact, address the issue in the arbitration award. As a result, Portis cannot meet the heavy burden of establishing that the award was procured by fraud. To the extent Portis is seeking a de novo review of the arbitration decision, such relief is unavailable. See Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) ("A motion to vacate filed in federal court is not an occasion for de novo review of an arbitral award.").

## Conclusion

For the reasons stated, the court finds no basis to vacate the arbitration award issued in favor of Ruan. Accordingly, the court will deny Portis' motion and confirm the arbitration award.

The Clerk is directed to send copies of this order to the plaintiff and all counsel of record.

DATED: This 19th day of December, 2016.

_____
Chief United States District Judge

6